**In re Herbert Warren LUX, Jr., Patsy Jean Lux, Debtors.**

**Herbert Warren LUX, Jr., Patsy Jean Lux, Plaintiffs,**

v.

**COUNTY OF SPOTSYLVANIA BOARD OF SUPERVISORS, Larry W. Davis, City Attorney, Michael B. O'Keefe, Asst. City Attorney, L. Kimball Payne, III, City Administrator, Spotswood Construction Loans, Kenneth S. Potter, Defendants.**

Bankruptcy No. 92–30320–T.
Nos. APN 92–3115, APN 92–3116.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Oct. 27, 1992.

John A. Gibney, Jr., Shuford, Rubin, & Gibney, Richmond, VA.

James J. Burns, Williams, Mullen, Christian & Dobbins, Richmond, VA.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

In this adversary proceeding, the debtors filed a complaint alleging the defendants acted in willful violation of the automatic stay, 11 U.S.C. § 362(a), and asserted damages of $250,000.00, costs of $30,000.00, and punitive damages of $1,000,000.00. Debtors allege in substance that the County of Spotsylvania (the county) and its agents acted unlawfully to disconnect their water service and that Spotswood Construction Loans (Spotswood) and its attorney, Kenneth S. Potter, acted in concert with the county to devalue the debtors' house so as to force them out.

The court has for consideration two defendants' motions to dismiss debtors' complaint for failure to state a claim upon which relief can be granted, for lack of subject matter jurisdiction, and on other grounds. For the reasons stated in this memorandum opinion the court grants the motions to dismiss, which will dismiss debtors' complaint as to all defendants.

### Facts

The debtors filed a voluntary petition under chapter 7 on January 22, 1992, receiving their discharge on May 23, 1992. Their trustee in bankruptcy filed a report of no distribution on March 27, 1992, and the clerk closed the case on August 24, 1992.

Prior to bankruptcy, the debtors began construction of their home located at 5602 Glen Eagle Drive in Spotsylvania County, Virginia. At that time the county provided a temporary water source during the construction period only. Upon completion of the house, the debtors failed to receive a certificate of occupancy from the county and failed to pay the hook up fees to obtain permanent county water service. The debtors continued to use the temporary water hook-up for a period of 17 months. The county notified the debtors that they were not in compliance with the Uniform Statewide Building Code and would need to obtain a certificate of occupancy. The debtors failed to do so. The county then cut off service to the debtors in December 1991. After several incidents where the debtors attempted to appropriate water from their neighbor and from the county's water system, the county arranged for the water to be permanently disconnected by removing the water meter on January 31, 1992.

Soon after debtors filed their bankruptcy petition they filed an action in the state court to enjoin the disconnection of the water by the county. The state court denied the injunction, and the county proceeded with its actions to deny the debtors water service until permanent hook-up was obtained. The debtors subsequently filed this adversary proceeding charging the defendants with violation of the stay and conspiracy.

During the course of debtors' Chapter 7 case, this court lifted the stay as to debtors' real estate so that Spotswood and Kenneth Potter, who were the beneficiary and trustee respectively in a deed of trust, could pursue foreclosure against the property.

### Discussion and Conclusions of Law

Separate motions to dismiss the debtors' complaint have been filed by the county and its employees and by Spotswood and

its attorney. The principal issues raised by the Motions concern (1) the bankruptcy court's jurisdiction to consider the complaint, and (2) whether the county willfully violated the automatic stay while debtors' bankruptcy case was pending.

*Jurisdiction*

■ In order to consider the complaint, this court must have subject matter jurisdiction pursuant to 28 U.S.C. § 157. Section 157(b)(1) provides in pertinent part that bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11. Subsection (b)(2) defines "core proceedings" with a non-exhaustive list, generally encompassing items that affect the estate and the claims against the estate.

The debtors have received their discharge in bankruptcy, and their case has been closed. The court had earlier granted relief from stay so that Spotswood and Kenneth Potter could proceed with foreclosure against the debtors' residence. Since the debtors' residence is no longer part of the bankruptcy estate and the outcome of any litigation will not affect the estate, defendants argue that the matter in controversy is not a core proceeding.

■ Jurisdiction may exist if the issues are otherwise related to a case under title 11 pursuant to 28 U.S.C. § 157(c)(1). The standard used to determine whether the issue is related to the bankruptcy case is "whether the outcome of [the] proceeding could *conceivably* have any affect on the estate being administered in bankruptcy." *Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (emphasis in original) (footnote omitted). The bankruptcy court has discretionary power to abstain from hearing a matter "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334.

■ Although the debtors' allegations of violation of the stay have a basis in the

Bankruptcy Code,[1] the court believes the outcome of the debtors' conspiracy suit has no significant relation to their closed bankruptcy case.

A similar fact situation was present in *In re InCor, Inc.*, 113 B.R. 212 (D.Md.1990). A creditor who held a secured claim against the debtor's accounts receivable and other property had received relief from stay to collect the receivables. Before debtor's final discharge was granted, the same creditor filed a complaint against a third party in bankruptcy court to collect a disputed amount of the debtor's accounts receivable. The district court held that the bankruptcy court lacked subject matter jurisdiction as the property was no longer part of the estate, and the collection of the accounts receivable "[would] have a speculative or insignificant effect upon the administration of the estate. Accordingly, 'related to' jurisdiction does not exist." *Id.* at 218.

Accordingly, I find that the motions to dismiss should be granted because this court lacks subject matter jurisdiction over the debtors' allegations; the claims brought by the debtors are non-core and unrelated to this bankruptcy case.

*Willfull Violation of Automatic Stay*

■ There exists a second and independent basis for this court to grant the county's motion to dismiss based on 11 U.S.C. § 362(b)(4). An automatic stay is imposed upon the filing of a petition under the Bankruptcy Code. 11 U.S.C. § 362(a). However, the stay protection does have exceptions. For example, § 362(b)(4) allows a governmental unit to act pursuant to its police or regulatory power during the pendency of the automatic stay. Section 362(b)(4) lifts the restraints of the automatic stay allowing governmental action to protect the public health and safety but not to protect a pecuniary interest of the governmental unit. *In re Ellis*, 66 B.R. 821, 824–25 (Bankr.N.D.Ill.1986). The automatic stay is not a shield to protect a debtor

---

1. The discussion infra decides the issue of the County's violation of the automatic stay. The County was acting pursuant to its regulatory and police powers and was exempt from the effects of the stay pursuant to § 362(b)(4). Also, the second claim of conspiracy between the County and Spotswood is a state law claim and should be adjudicated in a state proceeding.

from the "application and enforcement of valid state and local laws." *Cournoyer v. Town of Lincoln*, 790 F.2d 971, 977 (1st Cir.1986).

The county acted to protect its citizens by enforcing its ordinances and the Uniform Statewide Building Code [2] so that the debtors would secure an approved water source. The county was not attempting to collect an antecedent debt. Although a temporary water hook-up was permitted during the construction phase to assist with the construction, that service was not designed to sustain the needs of a fully operable home. The debtors admit no certificate of occupancy was obtained, and the laws prohibit one to reside in an abode if such certificate has not been acquired.

If the county allowed continued receipt of water from unapproved sources it may be liable for any injuries arising from the unsanitary water. *See* County's Memorandum p. 4. The rationale behind regulating water sources and occupancy of homes is to protect the health and safety of the residents and to ensure sanitary living conditions. Therefore, the court concludes the county was acting pursuant to its valid police and regulatory powers in disconnecting the debtors from the water source and was exempt from the stay pursuant to 11 U.S.C. § 362(b)(4).

In sum, the County of Spotsylvania was authorized by 11 U.S.C. § 364(b)(4) to proceed as it did not withstanding debtors' bankruptcy case. Since the county did not violate the automatic stay by attempting to enforce its laws and the laws of the Commonwealth of Virginia, there is no basis to proceed under these allegations of debtors' complaint.